IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

JASON LATAURUS HAMM,       )
                                  )
      Petitioner,             )
                                  )
    v.                     )       CV 118-192
                                  )    (Formerly CR 117-027)
UNITED STATES OF AMERICA,  )
                                  )
      Respondent.         )

---

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

---

Petitioner filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence.  Petitioner raises two ineffective assistance of counsel claims, including a claim trial counsel failed to file a notice of appeal when directed to do so.  The Court appointed attorney Kurt Worthington to represent Petitioner at an evidentiary hearing on this "lost appeal" claim.   Based on the evidence of record, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

I.     **BACKGROUND**

    A.    **Indictment and Pretrial Proceedings**

On May 3, 2017, the grand jury in the Southern District of Georgia charged Petitioner in a three-count indictment.  United States v. Hamm, CR 117-027, doc. no. 1 (S.D. Ga. May 3, 2017) (hereinafter "CR 117-027").   Along with naming Petitioner in a forfeiture allegation, the grand jury charged Petitioner with:  possession with intent to distribute 50

grams or more of a mixture or substance containing a detectable amount of methamphetamine, and an amount of marijuana (Count One), possession of a firearm in furtherance of a drug trafficking crime (Count Two), and possession of firearms by a convicted felon (Count Three).  Id.  Count One carried a possible statutory sentence of not less than five years nor more than forty years imprisonment.  Id., doc. no. 2.  Count Two carried a possible term of imprisonment of not less than five years and up to life imprisonment, and Petitioner faced a prison sentence of not more than ten years for Count Three.  Id.

The Court appointed attorney Christopher Cosper to represent Petitioner.  Id., doc. no. 13.  Mr. Cosper filed eight pretrial motions, (id., doc. nos. 16-23), including a motion for disclosure of exculpatory material under Brady v. United States, 397 U.S. 742 (1970), (CR 117-027, doc. no. 18).  The government responded to the defense motions, and the Court directed the parties to submit a joint status report explaining whether all pretrial motions had been satisfied or resolved, and if not, identifying which motions required a court hearing.  Id., doc. nos. 24, 25.  The joint status report stated the Brady motion, as it related to information about a controlled buy, had not been resolved.  Id., doc. no. 26.  The Court set a hearing on that motion for July 18, 2017.  Id., doc. no. 27.

However, on July 17, 2017, the Court received a signed plea agreement, and the hearing on the Brady motion was cancelled.  Id., doc. entries dated July17, 2017.  On July 19, 2017, the Court scheduled a change of plea hearing for August 3, 2017.  Id., doc. no. 28.

## B.    Guilty Plea

On August 3rd, Petitioner appeared with counsel and pled guilty to the lesser included offense of Count One of possession with intent to distribute controlled substances and to

possession of a firearm by a convicted felon as charged in Count Three. Id., doc. nos. 30-32. In exchange for the guilty plea, the government agreed to (1) dismiss the remaining counts against Petitioner in the indictment; (2) not object to a recommendation for a two-point acceptance of responsibility reduction and move for an additional one-point reduction under the Sentencing Guidelines if Petitioner's offense level was sixteen or greater prior to the acceptance of responsibility reduction; and (3) consider filing a motion, based on any "substantial assistance" provided by Petitioner, for downward departure under U.S.S.G. § 5K1.1 or requesting a reduction of Petitioner's sentence under Fed. R. Crim. P. 35. Id., doc. no. 32, (Plea Agreement), pp. 5, 7-8.

Petitioner's Plea Agreement contained the following factual basis for his guilty plea:

Count One

The elements necessary to prove the offense charged in Count One are: (1) that the defendant knowingly possessed a controlled substance, specifically methamphetamine, and; (2) that the defendant possessed the controlled substance with the intent to distribute. Defendant agrees that he is, in fact, guilty of this offense. He agrees to the accuracy of the following facts, which satisfy each of the offense's required elements: That on or about the 11th day of January 2017, in Richmond County, within the Southern District of Georgia, the defendant: **JASON LATAURUS HAMM** did knowingly and intentionally possess with intent to distribute a mixture or substance containing a detectable amount of methamphetamine, and an amount of marijuana, Schedule II and I controlled substances respectively, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C).

Count Three

The elements necessary to prove the offense charged in Count Three are (1) that Defendant knowingly possessed a firearm in or affecting interstate commerce; and (2) that, before possessing the firearm, Defendant had been convicted of a felony, that is, a crime punishable by imprisonment for more than one year.

Defendant agrees that he is, in fact, guilty of this offense. He agrees to the accuracy of the following facts, which satisfy each of the offense's

required elements: That on or about the 11th day of January 2017, in Richmond County, within the Southern District of Georgia, the defendant herein, **JASON LATAURUS HAMM** having been convicted of the following crimes punishable by imprisonment for a term exceeding one year:

• Possession With Intent to Distribute Cocaine, in the Superior Court of Richmond County, State of Georgia, 2007-RCCR-1528, convicted on January 15, 2008;

• Possession of Cocaine, in the Superior Court of Richmond County, State of Georgia, 2007-RCCR-834, convicted on January 15, 2008;

• Possession of Cocaine and Possession of a Firearm by a Convicted Felon, in the Superior Court of Richmond County, State of Georgia, 2005-RCCR-1557, convicted on August 8, 2006; [and]

• Possession of Cocaine, in the Superior Court of Richmond County, State of Georgia, 98-RCCR-1625, convicted on June 29, 1999;

did knowingly possess, in and affecting commerce, certain firearms, those are: a Ruger, Model P90, .45 caliber pistol, serial number 661-83369; a Chinese, Model SKS 7.62 x 39 caliber rifle, serial number 9014705; and a Bushmaster Firearms, Model XM15-E2S, .223/5.56mm caliber rifle, serial number L415528 said firearms having been shipped and transported in interstate and foreign commerce; in violation of Title 18, United States Code, Section 922(g)(1).

Id. at 1-3. With his signature on the Plea Agreement, Petitioner agreed he read and carefully reviewed it with Mr. Cosper, understood each provision, voluntarily agreed to it, and "stipulate[d] that the factual basis set out therein is true and accurate in every respect." Id. at 13.

By signing the Plea Agreement, Petitioner further agreed to "entirely waive[] his right to a direct appeal of his conviction and sentence on any ground" unless the Court (1) sentenced him above the statutory maximum, (2) sentenced him above the advisory

4

Sentencing Guidelines range, or (3) the government appealed the sentence. Id. at 9. Absent one of those three conditions, "[Petitioner] explicitly and irrevocably instruct[ed] his attorney not to file an appeal." Id. Further, Petitioner waived his right to collaterally attack his conviction and sentence on any ground other than ineffective assistance of counsel. Id. By signing the Plea Agreement, Petitioner additionally attested Mr. Cosper had "represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice given and the work performed by his attorney." Id. at 10-11.

At the guilty plea hearing, Chief United States District Judge J. Randal Hall first confirmed no one had threatened or pressured Petitioner into pleading guilty and that he clearly understood where he was and why he was in court. Id., doc. no. 50 ("Rule 11 Tr."), pp. 3, 5. Judge Hall reviewed all three charges against Petitioner in the indictment and confirmed Petitioner intended to plead to a lesser included offense of Count One and to Count Three. Id. at 5-7. Petitioner confirmed he had as much time as he needed to talk to Mr. Cosper about the charges. Id. at 7. Petitioner also testified under oath he was satisfied with the assistance he had received from Mr. Cosper, had read and reviewed the Plea Agreement with counsel before signing it, and understood everything in the Plea Agreement. Id. at 8, 10.

Judge Hall also explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed he clearly understood those rights. Id. at 8-10. Among the rights explained, Judge Hall reviewed the right to trial by jury, the presumption of innocence, the government's burden to prove guilt beyond a reasonable doubt, the right to present and cross-examine witnesses, and the right to remain silent. Id. Judge Hall also specifically reviewed the appeal and collateral attack waiver provisions of the Plea Agreement. Id. at 13.

Judge Hall confirmed that other than the Plea Agreement, no one on behalf of the government had promised anything to procure the guilty plea.  Id.  Additionally, Judge Hall reviewed the potential for a twenty-year term of imprisonment on the lesser included drug offense in Count One and for a ten-year term of imprisonment for conviction on the felon in possession charge in Count Three.  Id. at 14.  When asked, Petitioner confirmed that he understood the possible imprisonment penalties, as well as the potential $1,250,000 total fine and three years of supervised release after serving the prison term.  Id.

Judge Hall further explained that upon entry of the guilty plea, he would order the preparation of a Presentence Investigation Report (PSI), and Petitioner's sentence would be based on the information in the PSI.  Id. at 15-16.  Judge Hall specifically explained the PSI would calculate an advisory Sentencing Guidelines range, but he could sentence Petitioner within the range, below the range, or above the range.  Id. at 17.  Petitioner stated that he understood the sentencing process described by Judge Hall and that no one had promised him he would receive a particular sentence.  Id. at 17.

Judge Hall next reviewed the elements of the offenses the government would have to prove at trial to obtain convictions on the charges to which Petitioner was pleading guilty, and the government called Investigator Capitosti with the Richmond County Narcotics Division to provide the factual basis for the guilty pleas.  Id. at 17-19.  Inv. Capitosti testified that upon execution of a search warrant at 2020 ½ Richmond Avenue in Augusta, he and other investigators encountered Petitioner near a sink containing several baggies of methamphetamine tablets and a firearm later determined to have been stolen.  Id. at 20.  Investigators discovered approximately 202 grams of methamphetamine, five vacuum-sealed bags of marijuana, three firearms, and approximately $17,463 during the search of the

residence.  Id.  After advisement of his Miranda rights, Petitioner admitted to possession of the drugs and firearms discovered at the residence.  Id.

After Inv. Capitosti concluded his testimony, Judge Hall asked Petitioner if there was anything related to the two guilty plea counts he disagreed with and whether Petitioner was a convicted felon at the time he possessed the weapons discovered during the search.  Id. at 21-22.  Petitioner had no disagreement with the testimony and confirmed his status as a convicted felon.  Id.  Petitioner further confirmed his continuing desire to plead guilty to the lesser included drug offense of Count One and to Count Three.  Id. at 22.

Judge Hall then summarized the proceedings as follows:

> With the entry of the signed plea into the record of this proceeding, the Court now finds that the Defendant, Mr. Hamm, is competent.  He fully understands the charges against him.  The Court has heard an independent factual basis for his plea of guilty containing each of the essential elements of these two offenses.  He knows the statutory punishment that could be imposed on each of these charges and he knows his jury rights which he has knowingly and voluntarily waived.  I further find that Mr. Hamm's decision to plead guilty this morning was voluntary, knowing, and not as a result of any force, pressure, threats, or promises other than the promises made by the Government in the signed Plea Agreement.  Therefore, the plea is accepted, and I now adjudge Mr. Hamm guilty of the lesser included offense of count one and count three based upon his plea.

Id. at 23.

## C.    Post-Plea, Pre-Sentencing, *Ex Parte* Hearing

After the United States Probation Office prepared the PSI and Mr. Cosper requested and received an extension of time until December 18, 2017, to file objections, Petitioner wrote a letter dated January 25, 2018, expressing concern with Mr. Cosper's representation and asking to "exempt" Mr. Cosper from the case.  Id., doc. nos. 35-37.  The Court convened an *ex parte* hearing with Petitioner and Mr. Cosper where Petitioner expressed his

dissatisfaction with Mr. Cosper's failure to greet his mother when she took paperwork to his office and about Petitioner's concerns with signing the Plea Agreement after the Court had already scheduled a hearing on his <u>Brady</u> motion. <u>Id.</u>, doc. no. 57 (Ex Parte Hr'g Tr.), pp. 4-5. Petitioner further explained he had "seen quite a few loopholes in this case where I might just do want to change my plea and go straight to trial due to the fact that they want, you know, give me so much time anyway." <u>Id.</u> at 5.

Petitioner acknowledged Mr. Cosper told him if Petitioner insisted on the hearing rather than accepting the Plea Agreement offered, and then lost his motion after the hearing, Petitioner would also lose his favorable Plea Agreement. <u>Id.</u> at 12. Although Petitioner maintained he did not know a hearing had been scheduled at the time he signed the Plea Agreement, he had no explanation for why the scheduling of the hearing made any difference to his decision to accept the Plea Agreement in light of the fact that he had the critical information about withdrawal of the Plea Agreement if he insisted on pursuing the information about the controlled buy. <u>Id.</u> at 31, 40-42. Petitioner further explained once he saw the PSI, he began taking a harder look at his case and thought he might like to face twelve jurors rather than face the term of imprisonment set forth in the PSI. <u>Id.</u> at 15-17.

Mr. Cosper explained when the government first produced the discovery, Petitioner questioned the basis for the warrant that resulted in officers searching his residence and finding the drugs and guns upon which his federal charges were based. <u>Id.</u> at 19-21. The warrant had been obtained in part on an officer's sworn testimony he had been surveilling Petitioner's residence based on information from a confidential informant (CI), and the officer put in the warrant affidavit the CI had performed a controlled buy at the property. <u>Id.</u> at 20. As Petitioner was confident a controlled buy had never occurred at his residence, Mr.

Cosper sought information about the controlled buy.  Id. at 20-21.

The government did not want to jeopardize the CI and resisted turning over information about the controlled buy, arguing that because Petitioner was indicted for what was found in the residence, not for anything that occurred during the controlled buy, the CI information did not have to be produced.  Id. at 21.  The government did, however, offer a plea agreement to dismiss Count Two, an important concession because it removed a mandatory five-year consecutive sentence from Petitioner's potential sentence exposure.  Id. at 21-22.  When Mr. Cosper requested the hearing set for July 18, 2017, the government withdrew the plea offer.  Id. at 22.

Mr. Cosper explained to Petitioner that if he wanted to continue pursuing information about the CI and controlled buy, he faced exposure to a potential, additional five years in prison.  Id. at 23.  Thus, Petitioner faced a critical juncture in his case:  accept a favorable Plea Agreement, or turn it down in pursuit of additional information about a controlled buy that may or may not pan out in Petitioner's favor.  Id. at 24-25, 40.  Petitioner chose the favorable Plea Agreement.  Id. at 25-26.  Petitioner conceded he signed the Plea Agreement because he did not want to take the risk of losing the favorable deal, and he knew that if he continued to pursue discovery about the controlled buy, the government would withdraw the Plea Agreement.  Id. at 31, 41.

Petitioner also raised the issue at the *ex parte* hearing of wanting to withdraw his guilty plea.  Id. at 34.  The Court explained to Petitioner he was mistaken in his belief he could withdraw his guilty plea at will, but rather he would have to convince Judge Hall of a valid basis for allowing withdrawal of the plea.  Id. at 36-37.  The Court encouraged Petitioner to discuss his reasons for wanting to withdraw the plea with Mr. Cosper but

cautioned that getting cold feet prior to sentencing was not a valid reason upon which Mr. Cosper could file a motion to withdraw the plea.  Id.

At the conclusion of the hearing, the Court summarized Petitioner's three choices with respect to his representation in the case:  (1) continue with Mr. Cosper; (2) hire someone of his own choosing with his own funds; or, (3) represent himself.  Id. at 36, 38.  In the end, Petitioner chose to continue with Mr. Cosper and meet with him after the *ex parte* hearing to decide whether there was any basis for withdrawing the guilty plea.  Id. at 38; see also CR 117-027, doc. no. 41.  At that meeting, Petitioner chose not to withdraw his guilty plea because for several reasons.  First, there were no legally sufficient grounds to challenge the search warrant, and there were no cooperating witnesses to support a challenge to the search warrant.  (Doc. no. 11, pp. 5-6; doc. no. 11-1, Cosper Aff.)  Petitioner thought some family members might be connected to the CI, but the defense was unable to make a determination of who that might be.  Ex Parte Hr'g Tr. 22.  Second, Petitioner did not want to risk losing the favorable Plea Agreement by challenging the warrant.  (Doc. no. 11, pp. 5-6; doc. no. 11-1, Cosper Aff.)  Therefore, no motion to withdraw was filed, and the sentencing hearing continued as scheduled for February 14, 2018.  CR 117-027, doc. nos. 39, 42.

### D.    Sentencing

The United States Probation Office prepared a PSI which set Petitioner's Total Offense Level at twenty-seven, Criminal History Category at VI, and Guidelines imprisonment range at 130 to 162 months.  PSI ¶¶ 33, 51, 72.  Because the offense level for Count Three resulted in a higher adjusted offense level than Count One, (PSI ¶¶ 16-20), the higher offense level for Count Three was used.  PSI ¶ 29.  Additionally, because Count Three

involved three firearms, one of which had been reported stolen, and because Petitioner possessed a firearm in connection with the felony possession of illegal drugs, the base offense level of twenty-two was increased by two, two, and four points, respectively. PSI ¶¶ 21-24. That adjusted offense level was reduced by three points for acceptance of responsibility. PSI ¶¶ 31-33. The statutory maximum term of imprisonment for Count One was twenty years, and ten years for Count Three. CR 117-027, doc. no. 2, p. 2; PSI ¶ 71. Had Petitioner been convicted of the 18 U.S.C. § 924(c) charge in Count Two dismissed as part of the Plea Agreement, the statutory penalty would have required a mandatory, consecutive five-year term of imprisonment. CR 117-027, doc. no. 2, p. 1; PSI ¶ 73.

The government did not file any objections to the PSI, but Mr. Cosper raised three objections on Petitioner's behalf. See PSI Add.; CR 117-027, doc. no. 51, ("Sent. Tr."), pp. 2-3. In particular, Mr. Cosper strenuously argued against the manner in which the 130 to 162 months advisory Guidelines range amounted to "consecutive" sentencing, exceeding the statutory maximum for Count Three but falling below the twenty-year statutory maximum for Count One. Sent. Tr. 3-13; PSI Add. Obj. #3. Judge Hall overruled the objection, as well as the other two objections regarding assessment of criminal history points for confinement in a probation detention center based on a conviction for an offense committed at age seventeen and for three separate cases sentenced on the same day. Sent. Tr. 13-25; PSI ¶¶ 35, 41, 43, 44; PSI Add. Obj. #1-2. Thus, Judge Hall adopted the factual statements in the PSI, as well as the conclusions contained therein, and determined the advisory Guidelines range was 130 to 162 months. Sent. Tr. 26.

In mitigation, Mr. Cosper reiterated the harshness of the sentence calculated under the Guidelines and suggested a more appropriate range would be 87 to 108 months. Id. at 26-32.

11

Petitioner's statement to the Court included apologies to multiple individuals and thanks to Mr. Cosper "for his assistance and his knowledge and ability to try to assist me the best way he can." Id. at 32. Petitioner accepted responsibility for his crimes and stated his intention "to be a model citizen." Id. at 33. Judge Hall imposed a term of imprisonment of 150 months, stating his reasons for a sentence in the middle of the Guidelines range for a person posing a significant danger to the public as follows: possession of three firearms, including two high-power rifles and one stolen handgun, while also in possession of marijuana, codeine, and a significant amount of methamphetamine; and, a very lengthy criminal record dating back to age seventeen. Id. at 36.

In keeping with the terms of the Plea Agreement, Petitioner did not file a direct appeal.

### E.    § 2255 Proceedings

Petitioner timely filed the instant § 2255 motion to vacate, set aside, or correct his sentence, raising the following two ineffective assistance of trial counsel claims:

(1)    Counsel failed to provide "reasonable advice" during plea negotiations; and

(2)    Counsel failed to file an appeal after Petitioner instructed him to do so.

(See generally doc. no. 1.)

The Court scheduled an evidentiary hearing on Ground Two and appointed Mr. Worthington to represent Petitioner as to Ground Two only. (See doc. no. 14.) Ground One had been fully briefed, and the evidence of record in the case provided the Court with the necessary information to make its recommendation without further development of the

record.  (See id.)  Petitioner and Mr. Cosper testified at the hearing, though Mr. Cosper was not in the courtroom during Petitioner's testimony.

### 1.    Petitioner's Evidence and Testimony Regarding Lost Appeal Claim

As originally presented in the § 2255 motion, Petitioner asserts he told Mr. Cosper to file an appeal immediately after Judge Hall pronounced sentence on February 14, 2018, and reiterated that request in a letter dated February 16, 2018.  (Doc. no. 1-1, p. 16; doc. no. 1-2, Hamm Aff. and letter.)   The letter does not contain an address indicating where it may have been sent, but states Petitioner wanted an appeal filed because Mr. Cosper had promised a sentence no longer than 115 months.  (Doc. no. 1-2, p. 7.)  The letter differs in formatting and handwriting style from the letter Petitioner sent to the Court in January of 2018 that prompted the February 5, 2018 *ex parte* hearing.  Cf. CR 117-027, doc. no. 37 with doc. no. 1-2, p. 7.  There is no mention in the original § 2255 motion of any other instances in which Petitioner had discussed wanting to appeal.  Notably, however, the supporting memorandum states counsel misinformed Petitioner an appeal was being pursued.  (Doc. no. 1-1, p. 17, ¶ 36.)

According to Petitioner's affidavit, he knew prior to signing the Plea Agreement the government would withdraw its Plea Agreement if Petitioner continued to seek information about the controlled buy upon which officers had relied to obtain a search warrant, and based on Mr. Cosper's assurances of a sentence of no more than 115 months, he agreed to plead guilty.  Hamm Aff. ¶ 4.  Petitioner claims Mr. Cosper was ineffective for telling him there was no basis for challenging the search warrant or seeking information about the CI, and not telling Petitioner he had a Fourth Amendment right to challenge the search warrant and could plead guilty while still preserving his challenge to the search warrant.  Id. ¶ 5.

At the evidentiary hearing, the details of Petitioner's lost appeal claim changed. Petitioner stated he first started discussing a plan to appeal with Mr. Cosper at Lincoln County Jail, where Petitioner was detained prior to sentencing, when discussing the objections that would be filed to the PSI.  Court's recording system, *For the Record*, (FTR) 10:13.22-.50; 10:20.40-.51.   In addition, Petitioner testified he discussed filing an appeal with Mr. Cosper in a meeting directly following the February 5, 2018 *ex parte* hearing when Mr. Cosper told him a sentencing hearing had been set for February 14th.  They agreed on pursuing their objections to the PSI and appealing if they lost the arguments at sentencing. FTR  10:15.00-.45;10:17:50-:18.36.   Petitioner was confident Mr. Cosper knew about Petitioner's desire to appeal since work began on formulating objections to the PSI.  FTR 10:23.39-.42.   Petitioner also testified he and Mr. Cosper discussed filing an appeal immediately after sentencing on February 14th.  FTR 10:20.00-.49; 10:29.26-.32.

As to the February 16, 2018 letter attached to the § 2255 motion, Petitioner could not remember the details of his one paragraph letter or the exact address where he sent the letter, but he insisted he wrote it himself, addressed the envelope to Mr. Cosper, put a stamp on it, and mailed it.   FTR 10:22.00-.43; 10:32.54-:33.42.   Petitioner also testified he had jail officials make "three to four copies" of the letter but no copies of the envelope.   FTR 10:23.00-.20.   He further explained he sent the letter after he got his thoughts together because he wanted to do anything he could to cut his 150-month sentence.  FTR 10:21.20 - .49.   Contrary to the supporting memorandum where Petitioner wrote Mr. Cosper misinformed him an appeal had been filed, (doc. no. 1-1, p. 17), Petitioner testified when he never heard back from Mr. Cosper, he began preparing his § 2255 motion.  FTR 10:22.00-

.10; 10:34.06-.17.  Petitioner did not, however, send any other letters or make any phone calls to Mr. Cosper after the letter dated February 16th.  FTR 10:34.45-:35.20.

### 2.    Mr. Cosper's Testimony

At the time Mr. Cosper was appointed to represent Petitioner, he had handled approximately ten prior federal criminal appointments.  FTR 10:39.45-:40.00.  During the course of his representation, Mr. Cosper met with Petitioner two or three times at the federal courthouse, as well as two or three times at Lincoln County Jail, and spoke with Petitioner over the telephone.  FTR 10:42.04-.28.  Mr. Cosper's legal partner, Mr. Hudson, also met with Petitioner two or three times at Lincoln County Jail.  FTR 10:42.29-.38.

One of Mr. Cosper's meetings with Petitioner at Lincoln County Jail, as well as multiple telephone calls, were held to discuss Petitioner's PSI and objections to be filed thereto.  FTR 10:43.04-.14.  Mr. Cosper had detailed discussions with Petitioner about the objections, but he has no recollection of discussing, prior to sentencing, Petitioner's desire to appeal if the objections were unsuccessful.  FTR 10:44.05-.22.  Rather, Mr. Cosper was emphatic in his recollection that appeal rights were extensively discussed prior to Petitioner signing the Plea Agreement because of a provision waiving Petitioner's appellate rights in all but a limited number of circumstances.  FTR 10:44.33-.54.

When asked if he discussed appealing with Petitioner after the *ex parte* hearing, Mr. Cosper testified the focus of that meeting was whether there were any grounds for Petitioner to withdraw his guilty plea, and if so, would it be worth pursuing such a withdrawal and risk losing dismissal of Count Two and its mandatory, consecutive five-year sentence.  FTR 10:46.15-.56.  Petitioner chose to move forward with the guilty plea.  FTR 10:46.57-:47.00.  Mr. Cosper did not recall discussing an appeal, but if there was any such discussion, at any

time, he said the focus would have been that any appeal rights would be limited by the scope of the Plea Agreement.  FTR 10:47.06-.50; 10:48.04-.07.  Mr. Cosper did not recall there ever having been a specific ground for appeal discussed.  FTR 10:47.51-:48.03.

Mr. Cosper recalled meeting with Petitioner after sentencing in the holding cell and discussing the sentence was harsher than what either of them had hoped.  FTR 10:55.00-25. Mr. Cosper acknowledged Petitioner would want a lower sentence if there were any mechanism by which to obtain it, (FTR 10:54.04-.14), but as the Plea Agreement set the parameters of Petitioner's appellate rights, and the sentence fell within those parameters, the discussion in the holding cell was that there was no basis for an appeal.  FTR 10:55.26-.32. Petitioner thanked Mr. Cosper for his diligence and effort, but there was no instruction to file an appeal.  FTR 10:55.33-.42; 10:56.05-12.  Mr. Cosper was adamant that if Petitioner had asked him to file an appeal, the question would have been, "What do you want to appeal," but Petitioner never identified an issue he wanted to appeal.  FTR 10:56.26-.33.

As to the letter dated February 16, 2018, Mr. Cosper was certain he had never received that letter.  Although Mr. Cosper recalled sending correspondence to Petitioner on his firm's letterhead such that Petitioner could have had his address, Mr. Cosper's case file does not contain the February 16th letter.  FTR 10:40.08-.37; 10:48.15-.55.  Standard practice would be for Mr. Cosper to place any correspondence in the client file and follow up on any requests contained therein, but he has no record of receiving any mail from Petitioner after sentencing.  FTR 10:58.00-.38.  Mr. Cosper testified that although he primarily works out of the Augusta office of his law firm, he can receive mail sent to any branch office via a system of inter-office runners.  FTR 10:40.58-:41.46.  Mr. Cosper usually opens all of his

own mail, and he has successfully received prisoner correspondence at his office in the past. FTR 10:56.40-.49; 10:57.38-.51.

Mr. Cosper was confident he had received no instruction after sentencing from Petitioner to file an appeal, and Petitioner had never identified to Mr. Cosper any specific ground he wanted to raise on appeal.  FTR 10:56.01-.33.

## II.     DISCUSSION

### A.     Under Strickland v. Washington, Petitioner Bears a Heavy Burden on an Ineffective Assistance of Counsel Claim

Ineffective assistance of counsel claims are subject to the two-part test enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  See Massaro v. United States, 538 U.S. 500, 505 (2003); United States v. Armstrong, 546 F. App'x 936, 940 (11th Cir. 2013) (*per curiam*).

### 1.     Objective Standard of Reasonableness

Under the first prong, Petitioner must show "counsel's representation fell below an objective standard of reasonableness."  Strickland, 466 U.S. at 688.  In this regard, "[a] petitioner must overcome a strong presumption of competence, and the court must give significant deference to the attorney's decisions."  Hagins v. United States, 267 F.3d 1202, 1204-05 (11th Cir. 2001).  "Petitioner must prove that the approach taken by defense counsel would not have been used by professionally competent counsel."  Harich v. Dugger, 844 F.2d 1464, 1470 (11th Cir. 1988) (*en banc*), *partially overruled on other grounds*, Davis v. Singletary, 119 F.3d 1471, 1481-82 (11th Cir. 1997).  The purpose of this review is not to grade counsel's performance because, of course, every lawyer "could have done something more or different . . . .  But, the issue is not what is possible or 'what is prudent or

appropriate, but only what is constitutionally compelled.'"   Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (*en banc*).   Strategic decisions are entitled to a "heavy measure of deference."   Strickland, 466 U.S. at 691.

"Given the strong presumption in favor of competence, the petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one."   Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001) (citation omitted).   "The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer . . . could have acted, in the circumstances, as defense counsel acted . . . ."   Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010) (citing Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*)).   The Court must resist "using the distorting effects of hindsight and must evaluate the reasonableness of counsel's performance from counsel's perspective at the time."   Chandler, 218 F.3d at 1316; see also Waters, 46 F.3d at 1514 ("The widespread use of the tactic of attacking trial counsel by showing what might have been proves that nothing is clearer than hindsight – except perhaps the rule that we will not judge trial counsel's performance through hindsight.")

The impact of a guilty plea on the deficiency analysis is substantial both with respect to the scope and nature of the inquiry.   As to scope, the Supreme Court explained as follows:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann [v. Richardson, 397 U.S. 759 (1970)].

> . . . [I]t is . . . not sufficient that [a criminal defendant] show that if counsel had pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in the proceedings.
>
> . . . Often the interests of the accused are not advanced by challenges that would only delay the inevitable date of prosecution, or by contesting all guilt.   A prospect of plea bargaining, the expectation or hope of a lesser sentence, or the convincing nature of the evidence against the accused might well suggest the advisability of a guilty plea without elaborate consideration of whether pleas in abatement . . . might be factually supported.

Tollett v. Henderson, 411 U.S. 258, 267-68 (1973) (internal citations omitted).

As to nature of the inquiry, "counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial . . . ." Stano v. Dugger, 921 F.2d 1125, 1151 (11th Cir. 1991) (en banc) (quoting Wofford v Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984)). When a client pleads guilty, defense counsel "need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." Id.; see also Carter v. United States, 288 F. App'x 648, 649 (11th Cir. 2008) (per curiam).  Counsel can impart such an understanding by offering his informed opinion on the best choice after examining the facts, circumstances, pleadings, and laws at issue.  Wofford, 748 F.2d at 1508.

Because no absolute rules dictate reasonableness, counsel has no duty to investigate particular facts or defenses.  Chandler, 218 F.3d at 1317.  Counsel is not required to "pursue every path until it bears fruit or until all available hope withers."  Puiatti v. Sec'y, Fla. Dep't of Corr., 732 F.3d 1255, 1280 (11th Cir. 2013) (quoting Foster v. Dugger, 823 F.2d 402, 405 (11th Cir. 1987)).  As has been long-settled, "that a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing."  McMann, 397 U.S. at 770.

19

2.       **Prejudice**

Under the prejudice prong of Strickland, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.  A petitioner must affirmatively prove prejudice that would undermine the results of the proceedings because "attorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial.  That the errors had some conceivable effect on the outcome of the proceeding is insufficient to show prejudice." Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (citations and internal quotations omitted).  Indeed, the Court must examine the entirety of counsel's performance and the effect of such "in light of the record as a whole to determine whether it was reasonably probable that the outcome would have been different." Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989).

Furthermore, "where the alleged error of counsel is a failure to investigate or discovery potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." Hill v. Lockhart, 474 U.S. 52, 60 (1985).  Moreover, in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59; Stephens v. Sec'y, Fla. Dep't of Corr., 678 F.3d 1219, 1225 (11th Cir. 2012).  In assessing whether a petitioner has met this standard, the Supreme Court has emphasized the "fundamental interest in the finality of guilty pleas." Hill, 474 U.S. at 58.

20

Thus, a petitioner must prove "serious derelictions" in counsel's advice regarding the plea. Stano v. Dugger, 921 F.2d 1125, 1150-51 (11th Cir. 1991) (*en banc*) (citations omitted). Therefore, Petitioner must show both that counsel's representation fell below an objective standard of reasonableness, *and* that there is a reasonable probability that but for counsel's errors, he would have insisted on going to trial.  Hill, 474 U.S. at 56-59.

### B.    Petitioner Is Not Entitled to Relief on His Lost Appeal Claim in Ground Two

Cases in which a criminal defendant explicitly instructs his attorney to file a notice of appeal are subject to a bright-line rule.  "[A]n attorney's failure to file an appeal after the defendant requests him to do so entitles the defendant to an out-of-time appeal, even without a showing that there would have been any viable grounds for an appeal."  Montemoino v. United States, 68 F.3d 416, 417 (11th Cir. 1995); see also Roe v. Flores-Ortega, 528 U.S. 470, 477-78 (2000) (holding it is professionally unreasonable for attorney to fail to follow defendant's express appeal instructions).  Thus, if the Court determines Mr. Cosper failed to honor a request to file a notice of appeal, it must grant Petitioner's § 2255 motion on that ground.

The threshold issue relates to credibility.  "Credibility determinations are typically the province of the fact finder because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses."  United States v. Williams, 731 F.3d 1222, 1230 (11th Cir. 2013) (citing United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002)); see also United States v. Pineiro, 389 F.3d 1359, 1366 (11th Cir. 2004) (recognizing credibility determinations are within province of factfinder); Carr v. Schofield, 364 F.3d 1246, 1264-65 (11th Cir. 2004) (recognizing court's

opportunity to observe and study witnesses to make credibility determination concerning testimony on ineffective assistance claim).  In making its credibility determination, the Court must take into consideration not only the interests of the witness, but also "the internal consistency of the [witness's] testimony, or his candor or demeanor on the stand."  Ramirez-Chilel, 289 F.3d at 749, 750 (citation omitted).

Here, the Court specifically credits the testimony of Mr. Cosper over Petitioner.  Mr. Cosper, who is a seasoned attorney with a history of accepting criminal defense appointments, is well-known to the Court and has demonstrated himself to be an ethical and zealous advocate for his clients.  The notion Mr. Cosper ignored a specific request to file a notice of appeal on Petitioner's behalf and then lied to the Court about this circumstance is incredible.  At the hearing, Mr. Cosper's testimony was internally consistent and logically sound, and remained so during cross-examination.  Mr. Cosper recounted his representation of Petitioner in a detailed and methodical manner.

Mr. Cosper candidly acknowledged his disappointment in the sentence and lamented his inability to persuade Judge Hall to accept any of the PSI objections.  Mr. Cosper never backed down from his disagreement with the government's tactics over threatening to withdraw the Plea Agreement, but instead consistently explained it was a tough situation that he thoroughly explained to Petitioner, who ultimately decided to proceed with the favorable Plea Agreement.  Mr. Cosper was confident he had received no instruction after sentencing from Petitioner to file an appeal, and Petitioner had never identified to Mr. Cosper any specific ground he wanted to raise on appeal.  FTR 10:56.01-.33.

In contrast with the unwavering and consistent testimony of Mr. Cosper, Petitioner's self-serving testimony is unbelievable.  Petitioner's description of events was ever-changing

over the course of these proceedings.  In his initial motion, Petitioner stated he instructed Mr. Cosper to file a notice of appeal after sentencing.  The supporting memorandum also said Mr. Cosper misinformed Petitioner an appeal had been filed.  (Doc. no. 1-1, p. 17.)

By the time of the hearing, Petitioner's story had morphed into a long-formulated plan that had been set in motion well before sentencing to file an appeal if the proposed objections to the PSI were unsuccessful.  In rambling, disjointed, and often incoherent testimony, Petitioner presented a scenario in which he had repeatedly discussed appealing with Mr. Cosper during meetings at Lincoln County Jail and the federal courthouse, both before and after sentencing.  Yet Petitioner never identified any specific grounds for an appeal.

The conveniently discovered letter, to which Petitioner attached so much importance that he asked jail officials to make multiple copies, contains no mailing address, and there is no copy of the envelope in which Petitioner alleges he sent it.  Moreover, the letter makes no mention of the terms of the appeal waiver contained in the Plea Agreement, let alone suggests Petitioner wanted to disregard its terms - including his explicit and irrevocable instruction not to appeal.  Plea Agreement, p. 9.  Contrary to the supposed misinformation he received about Mr. Cosper filing an appeal, Petitioner now claims he never made any follow up calls or otherwise checked with Mr. Cosper about an appeal.  FTR 10:34.45-:35.20.

In light of these considerations, the Court finds that Petitioner never instructed Mr. Cosper to file an appeal.

The Court's finding on this point demonstrates the inapplicability of the case upon which Petitioner relied at the hearing, Garza v. Idaho, 139 S. Ct. 738 (U.S. 2019).  In Garza, the Supreme Court ruled the presumption of prejudice when trial counsel fails to file an appeal as instructed applies regardless of whether there is a signed appeal waiver.  139 S. Ct.

23

at 744.  In that case, there was no dispute the defendant who signed the appeal waiver had instructed counsel to file an appeal, but counsel made the choice not to file the appeal because of the signed waiver.  Id. at 743.

In a straightforward application of the reasoning from Flores-Ortega and in recognition that even a broad appeal waiver does not extinguish all appellate claims, the Supreme Court ruled in Garza, "[W]here, as here, an attorney performed deficiently in failing to file a notice of appeal despite the defendant's express instructions, prejudice is presumed 'with no further showing from the defendant of the merits of his underlying claims."  Id. at 750.  Here, however, the Court concludes there was no instruction to Mr. Cosper to file an appeal, and therefore, Garza affords Petitioner no relief.

However, even in cases where a defendant does not specifically instruct his counsel to file an appeal, the Court "must still determine 'whether counsel in fact consulted with the defendant about an appeal,'" and if counsel did not consult, whether there was a duty to do so.  Thompson v. United States, 504 F.3d 1203, 1206-08 (11th Cir. 2007) (citing Flores-Ortega, 528 U.S. at 478, 480).  Here, there is no dispute Mr. Cosper did in fact consult with Petitioner about filing an appeal.  Although Petitioner and Mr. Cosper disagree about the exact details of the consultation, both testified at the hearing that after sentencing they discussed their disappointment with the sentence.  However, under the terms of the Plea Agreement, the sentence, in the middle of the Guidelines range, did not trigger one of the exceptions to the appeal waiver provision in the Plea Agreement.  Thus, Mr. Cosper fulfilled any duty he had to consult with Petitioner about filing an appeal, and Petitioner is not entitled to relief on Ground Two.

24

**C.    Petitioner Is Not Entitled to Relief on the Ineffective Assistance Claims in Ground One**

Petitioner asserts Mr. Cosper's advice in the plea negotiation phase of the case amounted to ineffective assistance because he failed to:  (a) challenge the search warrant based upon Petitioner's assertion a CI never executed a controlled buy at Petitioner's residence as stated in the search warrant affidavit; (b) inform Petitioner a hearing had been scheduled on the Brady motion seeking information about the CI and controlled buy upon which the search warrant was based; and (c) accurately inform Petitioner his sentence could exceed 115 months.  These claims are barred by the entry of a valid guilty plea, and in any event are devoid of merit.

**1.    Entry of a Knowing and Voluntary Guilty Plea Bars Petitioner's Claims in Ground One**

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea.  United States v. Broce, 488 U.S. 563, 569 (1989).  In conducting its analysis, the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary.  Boykin v. Alabama, 395 U.S. 238, 242-43 (1969).  The Eleventh Circuit has described the requirements for a valid guilty plea as follows:  "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights.  A plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional sense."  United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997).

25

A guilty plea may be involuntary in a constitutional sense if a defendant is coerced into his plea, if a defendant does not understand the nature of the constitutional protections he is waiving, or "if a defendant has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt." Id.  Thus, a defendant must receive "real notice of the true nature of the charged crime." Id.

The Eleventh Circuit has further explained that, for a guilty plea to be knowingly and voluntarily made, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (per curiam) (citations omitted).  In addition, "a defendant who seeks reversal of his conviction after a guilty plea . . . must show a reasonable probability that, but for the error [under Rule 11 of the court accepting the guilty plea], he would not have entered the plea." Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

Judge Hall reviewed all the charges raised against Petitioner in the indictment, specifically informed Petitioner in clear terms of the charges to which he was pleading guilty, and reviewed the elements of the offenses the government would have to prove to obtain a conviction.   Rule 11 Tr. 5-7, 17-19.   Petitioner testified he understood this information.  Id. at 7, 18.  Judge Hall also provided a detailed explanation of the rights Petitioner would forfeit by pleading guilty, and Petitioner affirmed he understood his decision to plead guilty would result in a waiver of these rights.   Id. at 8-10.  Petitioner testified that other than the promises the government made in the Plea Agreement, no one had made promises to get him to plead guilty, and Judge Hall confirmed Petitioner's decision

26

to plead guilty was not the result of force, pressure, threats or promises other than those in the Plea Agreement. Id. at 3, 13.

Additionally, Judge Hall informed Petitioner of the possible penalty he faced upon conviction for the charges to which he was pleading guilty.  In particular, Judge Hall explained Petitioner could be sentenced up to twenty years in prison for conviction of the lesser included offense in Count One and ten years on Count Three.  Id. at 14.  Finally, Petitioner also testified he had enough time to discuss the charges with Mr. Cosper, reviewed the Plea Agreement with him prior to signing, understood the terms of the Plea Agreement, and was satisfied with the help he had received from Mr. Cosper.  Id. at 7, 8, 10; see also Plea Agreement, pp. 10-11 ("Defendant believes that his attorney has represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice given and the work performed by his attorney."); p. 13 ("I have read and carefully reviewed this agreement with my attorney.").

Thus, Judge Hall's thorough plea colloquy ensured Petitioner understood both the nature of the charges and the consequences of his guilty plea, and Petitioner was not coerced into pleading guilty.  See Moriarty, 429 F.3d at 1019.  Petitioner has not argued, let alone shown, a reasonable probability that but for any alleged error at the Rule 11 proceeding he would not have entered his guilty plea.  See Dominguez Benitez, 542 U.S. at 83. Accordingly, Petitioner cannot validly claim his guilty plea was unknowingly or involuntarily entered.

Any such assertion is contradicted by the record of the Rule 11 hearing and Petitioner's sworn testimony at that proceeding.  "[S]olemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent

collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also United States v. Rogers, 848 F.2d 166, 168 (11th Cir. 1988) ("[W]hen a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false."); United States v. Stitzer, 785 F.2d 1506, 1514 n.4 (11th Cir. 1986) (noting that "if the Rule 11 plea-taking procedure is careful and detailed, the defendant will not later be heard to contend that he swore falsely"). As Petitioner's plea was knowing and voluntary, his claims in Ground One are barred. See United States v. Patti, 337 F.3d 1317, 1320 (11th Cir. 2003) ("Generally, a voluntary, unconditional guilty plea waives all nonjurisdictional defects in the proceedings.").

### 2. Even if the Claims in Ground One Were Not Barred by Entry of a Valid Guilty Plea, They Are Without Merit

In Ground One (a) and (b), Petitioner claims Mr. Cosper provided constitutionally ineffective assistance by failing to challenge the search warrant used to discover the evidence upon which his federal charges were based. According to Petitioner, a CI never executed a controlled buy at Petitioner's residence as stated in the search warrant affidavit, and therefore, Mr. Cosper should have sought all information about the CI and the controlled buy in an effort to mount a challenge to the search warrant and/or negotiated a plea agreement preserving Petitioner's right to challenge the warrant. Relatedly, Petitioner complains Mr. Cosper provided ineffective assistance because he did not tell Petitioner, prior to signing the Plea Agreement, the Court had scheduled a hearing on the motion Mr. Cosper had filed seeking information about the CI and the controlled buy.

Applying the Strickland standard, it cannot be said Mr. Cosper's performance fell below an objective standard of reasonableness. The record is clear Mr. Cosper had in fact

filed a motion seeking information about the CI and the controlled buy in an effort to find any evidence to support Petitioner's contention the search warrant was obtained on false pretenses. Moreover, that motion was identified as an outstanding dispute between the defense and the government, and the Court set the matter down for a hearing. CR 117-027, doc. nos. 26, 27. The record is also, clear, however, Petitioner made a calculated choice to forgo pursuit of information about the CI and search warrant in favor of accepting a Plea Agreement reducing his possible sentencing exposure to a mandatory, consecutive five-year prison sentence.

The Supreme Court described at length the impact of a guilty plea on the Strickland deficiency analysis in Premo v. Moore, 562 U.S. 115, 125 (2011), when reversing a federal appeals court that found ineffective assistance by counsel who did not file a motion to suppress on behalf of a state defendant who pled guilty. Courts must "respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel." Id. Judicial restraint is critical because "bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks." Id. at 124. Furthermore, "[t]he absence of a developed or an extensive record and the circumstance that neither the prosecution nor the defense case has been well defined create a particular risk that an after-the-fact assessment will run counter to the deference that must be accorded counsel's judgment and perspective when the plea was negotiated, offered, and entered." Id. at 126.

As Mr. Cosper acknowledged, the deal on the table at the time Petitioner chose the favorable Plea Agreement was a hard choice, requiring "balancing opportunities and risks." Petitioner insisted the warrant was based on false information because no CI had conducted a

controlled buy at his residence.  However, there were not then, and Petitioner did not identify in these proceedings, any cooperating witnesses to support a challenge to the search warrant. Pursuing an opportunity to press the government for more information on the CI risked the withdrawal of the favorable Plea Agreement.  Moreover, even if Petitioner had succeeded in obtaining more information about the CI and the controlled buy, and assuming the information about the CI would have been favorable to Petitioner, he still faced the additional hurdle of then filing, arguing, and winning a motion to suppress.  He assumes the government would not have been able to make a substantive argument against suppression or otherwise argue an exception to suppression of evidence, such as, for example, the independent source and inevitable discovery doctrines.  See, e.g., Nix v. Williams, 467 U.S. 431 (1984); Wong Sun v. United States, 371 U.S. 471 (1963).

Petitioner's argument Mr. Cosper failed to discuss possible defenses related to challenging the warrant, or pleading guilty but preserving the right to challenge the warrant, also fails.  (Doc. no. 1-1, pp. 8, 14.)  First, Petitioner's argument about not discussing defenses related to the warrant is self-contradictory because Petitioner maintains he told Mr. Cosper from the beginning there was no CI who had made a controlled purchase at his residence and pressed Mr. Cosper to obtain information from the government about the issue. (See, e.g., doc. no. 1-1, p. 6.)  Mr. Cosper filed a motion seeking that information, and that motion was the crux of the plea negotiations.

Second, Petitioner is mistaken he could have pleaded guilty under the favorable terms of the Plea Agreement but automatically preserved his right to appeal the warrant issue. Pursuant to Federal Rule of Criminal Procedure 11(a)(1), a defendant may enter one of three types of pleas—guilty, not guilty, and (with the court's consent) nolo contendere.  However,

because "a guilty plea represents a break in the chain of events which has preceded it in the criminal process," when a defendant "solemnly admit[s] in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea . . . ." Tollett, 411 U.S. at 267.  Yet with consent of the court and government, "a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion.  A defendant who prevails on appeal may then withdraw the plea."  Fed. R. Crim. P. 11(a)(2).

The government's plea offer was conditioned upon dropping all inquiries about the CI and controlled buy referenced in the search warrant.  Without that information, there was no basis upon which to file a non-frivolous motion to suppress, where, as noted above, there were no cooperating witnesses to verify Petitioner's version of events.  There was no basis upon which Mr. Cosper could bargain for a conditional plea agreement preserving the right to appeal an issue the government had identified as the linchpin of the plea deal.

Moreover, Petitioner's argument he did not know a hearing had been scheduled on his Brady motion at the time he signed the Plea Agreement is a red herring.  When the Court held an *ex parte* hearing between the guilty plea and sentencing, Petitioner was unable to identify any reason why the scheduling of a hearing made any difference to the decision to plead guilty.  Petitioner conceded he signed the Plea Agreement because he did not want to take the risk of losing the favorable deal, and he knew that if continued to pursue discovery about the controlled buy, the government would withdraw the Plea Agreement.  Ex Parte Hr'g Tr. 31, 41.  Mr. Cosper explained to Petitioner if he wanted to go through with a

31

hearing and did not win, he would be facing exposure to a potential, additional five years in prison.  Id. at 23.

    And the outcome of a hearing requesting information about the CI was not a certainty. Longstanding Eleventh Circuit precedent is clear that an *in camera* hearing is not automatically required when a confidential informant's identity is requested.  See United States v. Kerris, 748 F.2d 610, 614 (11th Cir. 1984) (*per curiam*); see also United States v. Acosta, 807 F. Supp.2d 1154, 1272-73 (N.D. Ga. 2011) (recognizing *in camera* hearing not required and citing in support United States v. Tenorio-Angel, 756 F.2d 1505, 1509 (11th Cir. 1985), and United States v. Vann, 336 F. App'x 944, 950 (11th Cir. 2009).)  Indeed, where the informant was not an active participant in the criminal activity, disclosure is not required.  Roviaro v. United States, 353 U.S. 53, 61-63 (1957); United States v. Gutierrez, 931 F.2d 1482, 1490-91 (11th Cir. 1991).  Rather, the required balancing test from Roviaro focuses on three factors:  "the extent of the informant's participation in the criminal activity, the directness of the relationship between the defendant's asserted defense and the probable testimony of the informant, and the government's interest in nondisclosure."  Tenorio-Angel, 756 F.2d at 1509 (citations omitted).  A defendant must offer more than "mere conjecture or supposition about the possible relevancy of the informant's testimony."  United States v. McDonald, 935 F.2d 1212, 1217 (11th Cir. 1991).

    Here, there is no dispute Petitioner was not charged for any crimes allegedly committed during the transaction with the CI, and the government's interest in nondisclosure was clearly evidenced by offering a Plea Agreement based on dropping all inquiry into the CI.  Petitioner has offered nothing, then or now, to substantiate his allegations concerning the CI, and as Petitioner and Mr. Cosper discussed after the *ex parte* hearing, there were no

cooperating witnesses to corroborate Petitioner's story.  Obtaining information about the CI and controlled buy as a stepping stone to challenging the search warrant was not the certainty Petitioner now envisions.

In any event, whether or not the hearing had been scheduled, Petitioner had the critical information that pursuing a hearing would mean loss of the favorable Plea Agreement.  Petitioner chose the favorable deal.  Even now in these § 2255 proceedings, Petitioner does not deny he knew the terms of the government's offer, and he has not articulated any meaningful reason why *scheduling* versus *holding* a hearing made any difference to weighing the terms of the government's offer that he drop all pursuit of information about the CI and controlled buy to get the benefit of the favorable Plea Agreement.  Mr. Cosper not pursuing additional information to support filing a non-frivolous challenge to the search warrant - in light of Petitioner's informed decision to accept a favorable Plea Agreement - was objectively reasonable.

Nor has Petitioner shown prejudice.  As originally charged, Petitioner faced statutory terms of imprisonment of up to, *at a minimum*, fifteen years in total on Counts One and Three and a consecutive five-year term on Count Two.  CR 117-027, doc. no. 2.  According to the government's calculations, Petitioner's exposure under the advisory Guidelines was even higher as originally charged and without the acceptance of responsibility credit he received:  168 to 201 months on Counts One and Three, with an additional consecutive 60 months on Count Two, for a total of 228 to 270 months.  (Doc. no. 11, p. 18 & n.3.)  Mr. Cosper was able to salvage a deal resulting in a sentence of 150 months for crimes which Petitioner admitted committing not only to arresting officers, but also under oath to Judge Hall.  Petitioner has maintained throughout his underlying proceedings and these collateral

proceedings his overarching goal was to achieve the lowest possible sentence, and he accepted the plea offer as the best choice for limiting his sentence exposure. It was only after he saw the PSI and the advisory Guidelines range that he began to question the benefit of his bargain.

The Court held an *ex parte* hearing between the guilty plea and sentencing and explained to Petitioner getting cold feet about sentencing was not a valid reason to withdraw a guilty plea. Petitioner and Mr. Cosper met after that hearing to discuss whether there were any viable grounds for withdrawing the guilty plea. There were none identified then, and Petitioner reaffirmed his decision to stick with the guilty plea so as to preserve his favorable Plea Agreement and reduce his sentencing exposure. He still had the opportunity to argue for a lower sentence based on the detailed objections prepared by Mr. Cosper.

Moreover, Petitioner had multiple opportunities both before entry of the guilty plea and again prior to imposition of sentence to alert Judge Hall to any of the problems about which he now complains. He did not. To the contrary, he praised Mr. Cosper's efforts. Rule 11 Tr. 8; Sent. Tr. 32; Plea Agreement, pp. 10-11. To date, Petitioner has never argued factual innocence, and Mr. Cosper's efforts resulted in limiting Petitioner's sentencing exposure by five years. Petitioner cannot satisfy either prong of <u>Strickland</u> with respect to Mr. Cosper's representation with respect to the CI and the controlled buy.

In Ground One (c), Petitioner asserts Mr. Cosper misinformed him about his potential sentence because he promised Petitioner his sentence would not exceed 115 months. Even if the Court were to accept for the sake of argument Mr. Cosper did not provide an exactly correct prophesy of Petitioner's potential sentence, Petitioner cannot show the requisite prejudice. So long as the Rule 11 court correctly advises a defendant of the minimum and

maximum penalties he faces as a result of pleading guilty, a petitioner fails to establish prejudice by alleging that counsel gave erroneous advice about the sentence he might receive or the possibility for enhancements under the Guidelines.  See United States v. Wilson, 245 F. App'x 10, 11-12 (11th Cir. 2007) (*per curiam*) (no prejudice where counsel's deficient advice about possible sentencing implications was "cured" by district court, which explained "the consequences of the plea agreement, range of punishment, and sentencing contingencies before accepting [the] guilty plea"); see also United States v. Herrington, 350 F. App'x 363, 369 (11th Cir. 2009) (*per curiam*) (affirming district court's refusal to allow withdrawal of guilty plea with finding that defendant failed to show plea was not entered knowingly and voluntarily where judge at plea hearing set forth maximum possible penalties and fact that court was not bound by counsel's sentencing estimates).

At the Rule 11 proceedings, prior to accepting the guilty plea, Judge Hall reviewed the possible statutory penalty of twenty years and ten years, respectively, for the two charges to which Petitioner was pleading guilty.  Rule 11 Tr. 14.  Petitioner affirmed to Judge Hall he understood the potential statutory maximum penalties.  Id.  Petitioner also swore no one had promised him a specific sentence.  Id. at 17.  Petitioner cannot now be heard to challenge his prior sworn testimony to Judge Hall.  See Blackledge, 431 U.S. at 74; Rogers, 848 F.2d at 168; Stitzer, 785 F.2d at 1514 n.4.

If the sworn assertions at sentencing were not enough, and they are, Petitioner's own submissions in this case show he knew about the sentencing implications in his case.  (Doc. no. 1-1, p. 13 ("The Petitioner acknowledges that he stated during his plea hearing that he could be sentenced up to 20-years on the drug charge alone.").)  Petitioner has not shown the requisite prejudice.

In sum, "The law permits no one to accept the benefit of a guilty-plea deal, suffer buyer's remorse, then go back and criticize pretrial defense efforts that were cut off by agreeing to the deal."   Harris v. United States, No. CV 410-69/CR 407-285, 2011 WL 1740702, at *5 (S.D. Ga. Apr. 11, 2011), *adopted by*, 2011 WL 1740306 (S.D. Ga. May 5, 2011).  Petitioner is not entitled to relief on any of his claims in Ground One.

## III.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the § 2255 motion be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

SO REPORTED and RECOMMENDED this 14th day of June, 2019, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA